UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIM YARRIS,

        Plaintiff,

v.                              Case No:  2:14-cv-501-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## OPINION AND ORDER

Plaintiff Kim Yarris appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").   For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.    Issues on Appeal

Plaintiff raises two overarching issues on appeal: (1) whether the Administrative Law Judge ("ALJ") erred by determining that Plaintiff could return to her past relevant work ("PRW"); and (2) whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence.

### II.    Procedural History and Summary of the ALJ's Decision

Plaintiff filed an application for a period of DIB on August 6, 2012 and an application for SSI on August 13, 2012, both alleging that she became disabled and unable to work on October 5, 2010.   Tr. 268-70, 271-79.   The Social Security Administration denied her claim initially on November 20, 2012 and upon

reconsideration on January 17, 2013.    Tr. 235-39, 240-45; Tr. 248-52, 253-57. Plaintiff requested and received a hearing before ALJ M. Dwight Evans on February 6, 2014, during which she was represented by an attorney.    Tr. 92-157, 258-59. Plaintiff and vocational expert ("VE") Dr. Robert L. Lessne testified at the hearing.

On May 6, 2014, the ALJ issued a decision finding that Plaintiff is not disabled and denying her claim.    Tr. 12-24.    The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. 14.    At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 5, 2010, the alleged onset date ("AOD").    *Id.*    At step two, the ALJ determined that Plaintiff has the following severe impairments: history of hyperlipidemia, history of chronic fibromyalgia, chronic lumbar spine pain, obesity, affective disorder and anxiety disorder without agoraphobia.    *Id.*    At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."    Tr. 15.

Taking into account the effects from all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform light work, with limitations.    Tr. 16.    The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not fully credible.    Tr. 18.    The ALJ then found that Plaintiff was capable of performing her PRW as a House Cleaner, Cashier II and Hostess (Head).    Tr. 22.    The ALJ also alternatively

found that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform.   *Id.*   Thus, the ALJ found that Plaintiff is not disabled and denied her claim.   Tr. 23.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on August 7, 2014.   Tr. 1-6, 7-8.   Accordingly, the ALJ's May 6, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on August 27, 2014.   Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520, 416.920.   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The scope of this Court's review is limited

to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560 (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).

Accordingly, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

## IV.   Discussion

### a. *Whether the ALJ properly determined that Plaintiff could perform her PRW*

Plaintiff first argues that the ALJ erred by finding that she could return to her PRW, because the past employment he found her capable of performing did not constitute substantial gainful activity ("SGA"), and therefore by definition is not

PRW.  Doc. 20 at 14-15.  Specifically, Plaintiff argues that her previous jobs as a cashier, hostess and housekeeper do not constitute PRW, because she never had SGA-level earnings at those positions.[1]  *Id.*  Accordingly, Plaintiff contends, the ALJ's finding that Plaintiff can perform her PRW is "legally improper and wholly unsupported by the record."  *Id.* at 15.  Defendant argues that Plaintiff failed to meet her burden that she cannot perform her PRW as hostess and house cleaner, and because Plaintiff's counsel at the hearing – the same attorney who represents Plaintiff before this Court – made no attempts to elicit testimony or other evidence that these jobs did not rise to the level of SGA, Plaintiff should not be permitted to take an inconsistent position before this Court.  Doc. 22 at 5-7.

In this case, consistent with the Regulations, the ALJ first determined that Plaintiff has the RFC to perform light work with limitations, and then concluded that Plaintiff is capable of performing her PRW as a House Cleaner, DOT 323.687-014 with SVP of 2; Cashier II, DOT 211.462-010 with SVP 2; and Hostess (Head), DOT 349.667-014 with SVP of 2.  Tr. 16, 22.  The ALJ expressly stated in his opinion that "[t]he claimant's past relevant work was done at SGA levels," and then specifically identifies the positions of house cleaner, cashier II (Winn-Dixie) and hostess (head). Tr. 22.  The ALJ compared Plaintiff's RFC with the physical and mental demands of

---

[1] Plaintiff also asserts, correctly, that the ALJ stated elsewhere in his opinion that Plaintiff's employment as a cashier at Winn-Dixie, which occurred entirely after her AOD, did not rise to the level of SGA.  Doc. 20 at 14; *see* Tr. 14 ("The claimant worked after the alleged disability onset date but this work did not rise to the level of [SGA]."), 20 ("As mentioned earlier, the record reflects work activity after the alleged onset date.  Although that work *did not constitute disqualifying substantial gainful activity*, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.") (emphasis added).

these three positions and found that Plaintiff is able to perform the work both as actually and generally performed.   *Id.*   He noted that although Plaintiff has a severe mental impairment and nonexertional limitations, these do not preclude her from performing unskilled work at the light or lesser exertional levels.   *Id.*

Plaintiff does not assert that she is unable to perform her PRW; rather, she asserts that her PRW was by definition not PRW at all.   The VE testified that an individual with the limitations identified by the ALJ in various hypotheticals could perform Plaintiff's PRW as a hostess, housekeeper and cashier.   Plaintiff's counsel failed to argue that these jobs did not qualify as PRW; however, "a Social Security claimant's failure to raise an issue at the administrative level does not deprive a court of jurisdiction to consider the issue when it is raised for the first time during judicial proceedings."   *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 n.1 (11th Cir. 2002) (citing *Sims v. Apfel*, 530 U.S. 103 (2000)), *reh'g and reh'g en banc denied*, 52 Fed. Appx. 489 (11th Cir. 2002).

In a pre-*Loudermilk* case, this Court held that a plaintiff, "when squarely presented with an opportunity to object to the characterization by the [ALJ] of the nature of her past relevant employment, failed to do so.   Such failure constitutes a waiver of her right to raise the argument before this Court at this time."   *Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1347 (M.D. Fla. 2001).   Although the particular argument in this case is closely aligned with that in *Bechtold*, insofar as the issue relates to the ALJ's characterization or identification of PRW, in light of the Eleventh Circuit's subsequent decision in *Loudermilk* the Court concludes that Plaintiff has

not waived her right to raise the argument in this Court.   For the reasons that follow, however, the Court finds that the ALJ did not err with respect to finding that Plaintiff's past employment as a house cleaner and hostess constitute SGA and, therefore, PRW;[2] in the alternative, the Court finds that to the extent the ALJ should not have considered these jobs to constitute PRW, any error is harmless because the VE identified, and the ALJ found, that there are other jobs existing in significant numbers in the national and state economy that Plaintiff can perform.

Plaintiff reported as part of her work history, and states in her memorandum filed in this Court, that she worked as a head hostess at Friendly's Ice Cream from November 1997 until July 2001.   Tr. 331, 366; Doc. 20 at 14.   Plaintiff now asserts that her earnings in 1997, 1998 and 2001 did not rise to the level of SGA, stating that "[i]n 1998 she did not appear tot [sic] have worked for Friendly's," had no earnings from Friendly's in 1999, and "did not have SGA level earnings working as a hostess in 1999, 2000, or any other year."   Doc. 20 at 15.   Plaintiff reported no other work during the time period of late 1997 to July 2001, and her earnings rose above SGA level for at least two years during that period.   *See* Tr. 289, 290 (certified earnings

---

[2] To the extent that the ALJ's opinion is inconsistent with respect to Plaintiff's past employment as a cashier at Winn-Dixie—first noting that this work did not rise to the level of SGA and later identifying it as among Plaintiff's PRW that she still can perform—the Court finds that the ALJ committed an error of law.   *Cf.* Tr. 14 and 20 *with* 22.   Because the ALJ determined that there were other jobs among Plaintiff's PRW that she can perform, or, alternatively as set forth above, other jobs in the national economy, any error with respect to the ALJ's finding that Plaintiff could return to her PRW as a cashier II is harmless.   As this Court previously has explained, "[a] remand is not warranted when an ALJ commits harmless error."   *Friedhofer v. Comm'r of Soc. Sec.*, No. 2:14-cv-477-FtM-DNF, 2015 WL 3935380, at *4 n.2 (M.D. Fla. June 26, 2015) (citing *Pichette v. Barnhart*, 185 Fed. Appx. 855, 856 (11th Cir. 2006)).

record and summary earnings query showing total earnings for 1999 of $33,756.59). Although Plaintiff contends that these earnings came from other jobs and not her work as a hostess, Plaintiff bears the burden of persuasion and has not met that burden here.   *Bowen*, 482 U.S. at 146 n.5.

Plaintiff also argues that her work as a house cleaner in 2009 did not rise to the level of SGA and therefore also was not PRW.   *See* Doc. 20 at 15.   Plaintiff asserts that she earned a total of $1,274.00 in 2009, far less than the SGA level of $980.00 per month.   *Id.*   As Defendant correctly contends, however, such argument is belied by the record, which states that Plaintiff earned a total of $24,202.84 in 2009. Tr. 289, 290; *see* Doc. 22 at 7.   Although Plaintiff did not waive her arguments with respect to whether these jobs are SGA by failing to raise them before the ALJ, Plaintiff offered no evidence at the hearing, nor in her brief to this Court—other than her own contentions that relevant portions of the record do not actually mean what they say—that would allow the Court to conclude that the ALJ erred by determining that Plaintiff's past employment as a house cleaner and hostess constitute PRW.

Again, the claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Bowen*, 482 U.S. 137 at 146 n.5. Accordingly, Plaintiff bears the burden of proving that she cannot perform her PRW, and she failed to meet that burden here.   In rendering his decision, the ALJ considered the evidence of record and properly determined that Plaintiff retained the ability to perform her PRW, and therefore is not disabled.   Substantial evidence supports his decision.

   b.  *Whether the ALJ's RFC determination is supported by substantial evidence*

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence, because he failed to properly apply SSR 12-2p, which governs the evaluation of fibromyalgia, and therefore committed the following errors: finding Plaintiff less than fully credible; rejecting the opinion of Plaintiff's treating physician, Dr. Cardentey; and selectively crediting only portions of the opinions of non-examining state agency consultants, to which he accorded great weight.   Doc. 20 at 18-24.   The Commissioner asserts that the ALJ properly considered the medical evidence and opinions, Plaintiff's testimony and reports and other evidence and determined that Plaintiff is not disabled; and substantial evidence supports his decision.   Doc. 22 at 8-23.

When the ALJ finds that an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ then will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   Tr. 22; 20 C.F.R. §§ 404.1520(e), 416.920(e).   Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 15.   Therefore, the ALJ proceeded to assess and make a finding regarding Plaintiff's RFC.

The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a),

416.946(c).   The claimant's age, education and work experience are considered in determining her RFC and whether she can return to her past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.   *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).   The ALJ must also consider all allegations of physical and mental limitations, not just those determined to be severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).   "When a claimant cannot perform a full range of work at a given level of exertion or has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE."   *Smith v. Soc. Sec. Admin.*, 272 Fed. Appx. 789, 799-800 (11th Cir. 2008) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)).

Here, the ALJ determined that Plaintiff has the RFC to perform a reduced range of light work.   Tr. 16.   The ALJ then concluded that Plaintiff is capable of performing her PRW, as discussed *supra*.   Tr. 22.   The ALJ, however, also made alternative findings that Plaintiff is capable of performing other jobs in the national economy, such as Marker, DOT 209.587-034, which is light, unskilled work with SVP

of 2 and of which there exist 313,723 in the national economy and 22,077 in the state;

Checker Clerical, DOT 222.687-010, which is light, unskilled work with SVP of 2 and

of which there are 22,225 in the national economy and 1,488 in the state; and Office

Helper, DOT 239.567-010, which is light, unskilled work with SVP of 2 and of which

there are 43,767 in the national economy and 2,681 in the state.   Tr. 23.

Because the ALJ concluded that Plaintiff is capable of performing her PRW,

the ALJ was not required to consult a VE.   *See, e.g.*, *Lucas v. Sullivan*, 918 F.2d

1567, 1573 n.2 (11th Cir. 1990); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987);

*Hernandez v. Comm'r of Soc. Sec.*, 433 Fed. Appx. 821, 823 (11th Cir. 2011).

Nevertheless, VE Dr. Robert Lessne appeared by phone during the hearing, and he

testified in response to four hypotheticals from the ALJ and questions from both the

ALJ and Plaintiff's counsel.   First, the ALJ asked the VE to:

> Assume if you would a hypothetical individual who was 48
> years old at the time of the alleged onset date, who is
> currently 52 years old; who has the education, past work
> history as Ms. Yarris; who has a reduced range of a light
> exertional RFC; that is she can lift and carry 20 pounds
> occasionally, 10 pounds frequently; can stand and/or walk
> for six hours in an eight hour work day; she can likewise
> sit for eight hours in a – sit for six hours in an eight hour
> workday; ability for pushing and pulling would be
> unlimited except to the extent of her ability for lifting
> and/or carrying.   Further, she has the ability to perform
> the following activities on an occasional basis, occasional
> being defined as up to one third of the work day.   She can
> occasionally climb ramps and stairs; ladders, ropes,
> scaffolds; balancing, stooping, kneeling, crouching, and
> crawling.   She can be exposed to atmospheric conditions
> such as fumes, odors, dust, and gases – concentrated
> exposure to atmospheric conditions such as fumes, orders
> [sic] dust and gases on an occasional basis, better perform
> in a controlled – in an environment controlled by a

> thermostat; essentially basically an air conditioned
> environment.   She can on an occasional basis work in
> proximity to hazardous moving and mechanical parts.
> There's no limitation on her involvement or exposure to
> extreme cold, extreme heat, wetness, humidity, and noise,
> as well as vibrations.   She can be exposed to those on an
> unlimited basis.     Are there any jobs that such a
> hypothetical – are there any jobs in the claimant's past
> work history such a hypothetical individual could be able
> to perform?

Tr. 136-37.   The VE testified that such a hypothetical individual could perform all of

Plaintiff's past work, except as a nurse's assistant.[3]   *Id.* at 136.

The ALJ then asked the VE whether the same individual described in the first

hypothetical, but who also was limited in her ability to understand, remember and

carry out simple instructions and who only could concentrate and persist on the

simple instructions for two hour segments, could perform any of Plaintiff's PRW.   *Id.*

The VE testified that such an individual could perform the jobs of cashier II,

cleaner/housekeeper and hostess.   Tr. 136-37.   The ALJ then asked as a third

hypothetical whether the individual described in the second hypothetical could

perform any other jobs in the national economy.   Tr. 137.   The VE identified the jobs

of document preparer, DOT 249.587-018, which is sedentary exertional level with

SVP of 2 and of which there are 26,284 in the national economy and 1,303 in the state

economy; marker, DOT 209.587-034, which is light with SVP of 2 and of which there

are 313,723 in the national economy and 22,077 in the state; checker, clerical, DOT

---

[3] During the hearing, the VE testified that Plaintiff also worked as an assistant
property manager, with "leasing agent" being the closest job description in the DOT which is
classified as light exertion with SVP of 8; and a nurse's assistant, which is classified as
medium exertion with SVP of 4.   Tr. 133.

222.687-010, which is light with SVP of 2 and of which there are 22,225 jobs in the national economy and 1,488 in the state; and office helper, DOT 239.567-010, which is light with SVP of 2 and of which there are 43,757 in the national economy and 2,681 in the state, as jobs that such an individual could perform.[4]   Tr. 137-38.

In response to questions from Plaintiff's counsel, the VE testified that if an individual's ability to concentrate was affected for greater than 15% of the workday, then all jobs would be precluded at all exertional levels.   Tr. 139.   Similarly, if an individual were incapable of performing fine manipulation bilaterally, then the VE estimated that 98% of the jobs in the DOT would be precluded.   Tr. 143.   If the individual were expected to be absent for one day or more per month, such absences would preclude all jobs.   Tr. 150.

Plaintiff argues that the ALJ erred by finding Plaintiff's statements about her limitations less than fully credible, rejecting in part her treating physician's opinion and citing the lack of objective medical evidence as a reason therefor, which, in turn, resulted in a RFC that does not reflect the true degree of Plaintiff's limitations.   Doc. 20 at 18.   Plaintiff relies on the Eleventh Circuit's opinion in *Moore v. Barnhart* for the proposition that it is reversible error for the ALJ to reject Plaintiff's statements

---

[4] The "fourth hypothetical" the ALJ asked the VE occurred later in the hearing, after the VE answered questions from Plaintiff's counsel, and was the ALJ's attempt to clarify the record with respect to the effect, if any, a limitation to working only 2-hour segments with ensuing breaks would have, and what exactly was meant by 2-hour segments.   *See* Tr. 153-55.   The potential for confusion arose when Plaintiff's counsel asked how an individual's ability to perform the jobs identified by the VE would be affected by their ability to concentrate only in two hour segments; the VE stated that he interpreted that question as working two hours, then a standard ten or fifteen minute break, followed by another two hours and then another break, but if the limitation was to concentrating for only two hours total in a workday, then all jobs would be precluded.   Tr. 139.

about her limitations, or her treating physician's statements about her limitations, merely because they are unsupported.   Doc. 20 at 18 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005)).   In *Moore*, the Eleventh Circuit distinguished that case from a prior case in which the court reversed an ALJ's decision to give reduced weight to a claimant's testimony based on the lack of objective evidence supporting the impairment, by highlighting that in *Moore* the ALJ's credibility finding did not turn on the lack of objective evidence documenting fibromyalgia; but rather, relied on the inconsistencies between the plaintiff's reported daily activities and claims of impairment.   *Moore*, 405 F.3d at 1212 (citing *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2000)).

Here, the ALJ states, "[i]n terms of claimant's alleged fibromyalgia and back pain, there is little to no objective medical record to support the claimant's allegations of disabling pain."   Tr. 19.   The ALJ also notes, however, that Plaintiff also "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."   Tr. 20.   The ALJ specifically highlighted that Plaintiff worked, albeit part-time, after her AOD and received unemployment benefits, which requires the recipient to assert she is willing and able to work.   *Id.*   Moreover, despite Plaintiff's contention that it is error to cite a lack of objective evidence as a reason in assigning less weight or credibility in fibromyalgia cases, SSR 12-2p explains that some objective evidence is *required* to find that the claimant's fibromyalgia prevents her from performing the functional requirements of work.   That ruling states, "[a]s with any claim for disability benefits,

before we find that a person with [a medically determinable impairment of fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any [SGA]." SSR 12-2p, 2012 WL 3104869, at *2. The ruling also acknowledges that, "[f]or a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6. Even so, a claimant's RFC still is used to determine whether she is capable of performing PRW or other jobs in the national economy, and "[t]he usual vocational considerations apply." *Id.*

The Eleventh Circuit has upheld an ALJ's determination to assign reduced weight to a doctor's opinion, even as to the claimant's fibromyalgia, where the doctor's opinion that the plaintiff was disabled was inconsistent with her treatment records. In *Harrison v. Commissioner of Social Security*, a case in which the plaintiff alleged disability based on, *inter alia*, fibromyalgia, the court noted that despite the doctor describing the plaintiff as "totally and permanently disabled," her treatment records "contain[ed] no indication that Harrison's ailments were so severe that they prevented her from maintaining a job." 569 Fed. Appx. 874, 877 (11th Cir. 2014). Instead, the court noted that the doctor's examinations of the plaintiff "were consistently unremarkable" and lacked any findings that the plaintiff "suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia." *Id.* The court also highlighted that the doctor in *Harrison*

prescribed medications but never recommended more aggressive treatment, and the doctor's opinions could not be rectified with the plaintiff's own reported activities. *Id.*   Thus, it was not improper for the ALJ here to discount Plaintiff's testimony and reports and her doctor's opinions as to her fibromyalgia.   Moreover, it is well-settled that a diagnosis alone is insufficient to establish disability; the relevant inquiry is whether a plaintiff's impairment affects her ability to perform basic work activities. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005); *Moore*, 405 F.3d at 1213 n.6.

Here, the ALJ noted the lack of objective medical evidence to support Plaintiff's allegations of disabling pain and highlighted that treatment records of her primary care physician, Dr. Cardentey, include some examination results that are normal and within normal limits.   Tr. 19.   The ALJ discussed the consultative examination performed by Dr. Stanley Rabinowitz on November 3, 2012, which also revealed relatively normal findings, although Plaintiff had some decreased range of motion and trigger points.   Tr. 18, 19.   The ALJ also noted that Plaintiff "has not undergone any diagnostic testing such as x-rays, MRI, CT scan, or EMG for her alleged nerve pain.   Her allegations are not well supported by the available medical evidence. She has not seen a specialist for her conditions and alleged pain."   Tr. 19.   As set forth above, these are properly considered when determining whether a plaintiff's condition is as severe as alleged.

Here, the ALJ explained that he:

> is persuaded that the claimant's treatment history
> provides a reasonable basis for some of the symptoms

> alleged by the claimant and that *her impairments would*
> *impose some restrictions in her ability to perform work*
> *related activities*.   However, the totality of her statements
> regarding her limitations are inconsistent with the
> objective evidence that does not demonstrate the existence
> of limitations of such severity as to preclude the claimant
> from performing any work on a regular and continuing
> basis.

Tr. 20 (emphasis added).   As to the specific rejection of portions of Dr. Cardentey's opinions, the ALJ explained that the doctor's opinion regarding Plaintiff's mental limitations was given little weight because this area is outside the doctor's expertise. Such is a proper consideration when weighing medical source opinions.   *See* 20 C.F.R. § 404.1527(c)(5) ("Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); 20 C.F.R. § 416.927(c)(5) (same).

Supportability also is considered when determining how much weight to accord a medical source, even a treating physician, and an ALJ properly may assign reduced weight to medical opinions that are not well-supported by objective medical evidence. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).   The ALJ assigned reduced weight to the opinions expressed by Dr. Cardentey on the Physical Capacity Evaluation form dated January 26, 2014, on which he opined that Plaintiff was not able to stand or walk for any amount of time at one time (he checked "none") but could stand or walk for a total of only one hour in an 8 hour workday; could not sit for any length of time during an 8 hour work day (again, he checked "none"), yet can sit a total of one hour in an 8 hour workday; cannot lift any weight for any frequency during the workday (he again checked "none"); and could use her hands for repetitive fine manipulation, albeit

decreased; and could never bend, squat, climb or reach above shoulder level due to joint pain and stiffness, but occasionally can crawl.   Tr. 662-63.

Although the ALJ rejected Dr. Cardentey's opinion regarding Plaintiff's ability to perform work-related activities as unsupported by the doctor's own records, the ALJ noted that he "generally gives weight to Dr. Cardentey's findings as a treating source" and accepted his underlying examination findings, which largely revealed that Plaintiff could function normally.   Tr. 21.   For example, records from Dr. Cardentey dated November 6, 2012 state that Plaintiff had widespread pain and limited range of joint motion due to fibromyalgia, but her gait and station were normal for short periods of time and she did not need an assistive device for ambulation.   Tr. 528.   Dr. Cardentey also described Plaintiff's grip strength as 4/5. *Id.*   He rated Plaintiff's lower extremity strength as 3/5, but noted that she would require frequent breaks on a daily basis and experiences flare-ups daily.   Tr. 529. Although these findings describe limitations, the ALJ determined that the treatment records do not reveal extreme limitations like those the doctor identified on the form, such as the complete inability to sit, stand or walk for any period of time at a time, and only an hour total, in an 8 hour day.   It is not for the Court to reweigh the evidence.

The ALJ also explained that Dr. Cardentey's reporting of extreme limitations is inconsistent with other evidence in the record, such as the report of Dr. Stanley Rabinowitz dated November 4, 2012.   Tr. 514-21.   Dr. Rabinowitz noted that fibromyalgia was among Plaintiff's chief complaints and that she has a history of

chronic fibromyalgia beginning in April 2012.   Tr. 514.   Dr. Rabinowitz also noted, however, that Plaintiff walked normally and without an assistive device and could dress and undress without assistance.   Tr. 515.   He identified multiple positive trigger points on a fibromyalgia report form, but also noted there was no evidence of active joint inflammation or similar, and that Plaintiff's grip strength appeared normal and her dexterity was not impaired.   Tr. 515-16.   She also had no difficulty getting on or off the examination table, but had mild to moderate difficulty squatting, and normal motor strength bilaterally in her upper and lower extremities.   Tr. 516. Dr. Rabinowitz also completed a Range of Motion Report Form for the Florida Division of Disability Determinations, which identifies the normal range of motion for various motions and space for indicating the patient's range of motion as to each. Tr. 519-21.   Dr. Rabinowitz indicated that Plaintiff's range of motion was within normal limits, except that her extension and lateral flexion were reduced to 20 degrees out of a possible 25, and her lumbar spine forward flexion also was reduced. Tr. 519.

Dr. Cardentey's work-related limitations, as identified on the Physical Capacity Evaluation form, also are not supported by Plaintiff's own reports of daily activities and reports to other medical sources.   Dr. Claudia Zsigmond noted as part of a disability evaluation that Plaintiff drove herself to the appointment and can drive short distances, and further that Plaintiff's "social life is somewhat active on the weekends with her partner and her friends."   Tr. 525.   Plaintiff reported that she is able to watch television, "make something quick to eat," help take care of her pets,

does laundry once per week and dusts every other day, uses the computer and talks on the phone up to 25% of the day, attends church weekly and shops for groceries in the store (with the use of an electric cart). Tr. 323-27. Daily activities are properly considered when evaluating complaints of disabling pain. 20 C.F.R. § 404.1529(c)(3)(i).

While the performance of everyday tasks cannot be used as the sole evidence to determine that a claimant is not disabled, Plaintiff's participation in such activities supports the ALJ's determination that she is capable of working, with restrictions. *See, e.g.*, *Moore*, 405 F.3d at 1212 (noting that the ALJ properly discredited a treating physician's testimony by pointing out the contrasts in the claimants daily activities and the physician's diagnosis); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because her daily activities demonstrated otherwise). The ALJ therefore properly considered this information when concluding that Plaintiff is not as limited as alleged.

Plaintiff next argues it was error for the ALJ to consider her post-AOD work at Winn-Dixie when considering her credibility. Even if such work did not rise to the level of SGA, it properly is considered when determining whether a plaintiff is as limited as alleged. *See* 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the [SGA] level. . . . Even if the work you have done was not [SGA], it may show that you are able to do more than you actually did."); *see also*

*Cooper v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 803, 808 (11th Cir. 2013).   Although Plaintiff invites the Court to conclude that Plaintiff's employment at Winn-Dixie actually supports her claim that she is unable to work, the Court is not permitted, within the limited scope of its review, to reweigh the evidence.   Credibility determinations are reserved for the ALJ and, when clearly articulated and supported by substantial evidence, will not be disturbed.   *Stokes v. Colvin*, No. 3:14-cv-350-J-MCR, 2015 WL 1754603, at *8 (M.D. Fla. Apr. 17, 2015) (quoting *Moore*, 405 F.3d at 1212 and *Foote*, 67 F.3d at 1562).   Here, because the ALJ articulated sufficient reasons for finding Plaintiff less than fully credible, the Court must affirm.

Plaintiff further alleges the ALJ erred by considering Plaintiff's receipt of unemployment benefits.   The Eleventh Circuit and this Court repeatedly have held that a claimant's receipt of unemployment benefits properly is considered when determining whether she is capable of working.   *See, e.g.*, *Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014) (order adopting report and recommendation) ("Courts in the Eleventh Circuit, in addition to several circuit courts, have found a claimant's receipt of unemployment benefits inconsistent with a claim of disability during the same period." (citing cases)).   The ALJ therefore could, and properly did, consider Plaintiff's receipt of benefits during the period she claims she was disabled and unable to work as one factor in concluding that her testimony and reports were less than fully credible.

Plaintiff also asserts that the ALJ erred in finding that Plaintiff could perform light work with limitations because the ALJ failed to include appropriate limitations

with respect to Plaintiff's difficulty concentrating and inability to perform work at a consistent pace without an unreasonable number of breaks.   Doc. 20 at 21-22. Plaintiff highlights the VE's testimony in response to questions from counsel that if she required more than the customary breaks or is limited to occasional fine manipulation or reaching, then most, if not all, work would be precluded.   *Id.*   As the Commissioner notes, however, the ALJ was not required to include in his hypotheticals or RFC any alleged limitations that he found were not credible.   Doc. 22 at 22; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."); *see also Pierson v. Comm'r of Soc. Sec.*, 494 Fed. Appx. 930, 935 (11th Cir. 2015) (noting ALJ was not required to include limitations in a hypothetical to the VE based on a plaintiff's testimony the ALJ found was not credible and doctors' opinions he rejected).   The ALJ explained his reasons for finding Plaintiff's testimony and reports, and, in part, those of her treating physician, less than fully credible; and his decision in this regard is supported by substantial evidence.

Plaintiff bears the burden of proving that she cannot perform her PRW, and the ultimate burden of proving that she is disabled.   She failed to meet those burdens here.   In rendering his decision, the ALJ considered all medical evidence of record and properly determined that Plaintiff retained the ability to perform her past PRW, or, alternatively, that she can perform other jobs in the national economy, and therefore is not disabled.   In doing so, the ALJ applied the correct legal standards

and the overall record in this case reveals that substantial evidence supports his decision.

## V.     Conclusion

When reviewing the final decision of the Commissioner, the Court does not "reweigh the evidence" or "decide the facts anew" even where the evidence preponderates against the Commissioner's decision. *Winschel*, 631 F.3d at 1178; *Edwards*, 937 F.2d at 584 n.3. Within that framework, upon review of the record as a whole, the Court finds that the ALJ applied the proper legal standards when determining that Plaintiff is not disabled, and his decision is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of September, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record